NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOLAN NERAHOO, | Hon. Dennis M. Cavanaugh |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 2:12-cv-06553 (DMC) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Appeal of Nolan Nerahoo ("Plaintiff" or "Nerahoo") from the final decision of the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's application for disability benefits under Title II and/or Title XVI of the Social Security Act. This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure.

After reviewing the submissions of both parties, for the following reasons, the finding of the Commissioner is affirmed.

1

I. **BACKGROUND**[1]

   A. **Procedural History**

On May 27, 2009, Plaintiff filed an application for disability insurance benefits ("DIBs") alleging that he was disabled as of February 23, 2009. Plaintiff also filed an application for Supplemental Security Income ("SSI"), which was denied and not appealed. Plaintiff's application for DIBs was denied both initially and on Reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on January 11, 2011 before ALJ Richard L. DeSteno ("the ALJ"). On January 25, 2011, a decision was issued denying Plaintiff's application. On August 16, 2012, the Appeals Council concluded that there were no grounds for review. Plaintiff then commenced the instant action before this Court.

   B. **Factual History**

      1) **Testimony of Plaintiff**

Plaintiff was born in Trinidad and Tobago and came to the United States in June 2001. From 2001-2009, he was employed as a dock worker, which required him to load and unload freights from trailers with his hands. At this job, Plaintiff had to lift and carry "75 to 100 plus" pounds.

Plaintiff has a heart condition and has five stents and a defibrillator implanted. His heart beats faster if he is "stressed out" and he sometimes gets palpitations. Plaintiff has had diabetes since 2005, for which he takes pills. If Plaintiff is stressed or overworked, he gets "a little palpitation and pain in the chest." He can sit for one to two hours relaxing and watching television, and he can stand for about the same amount of time. Plaintiff can lift and carry no

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers and the transcript of the record.

more than five to ten pounds. Plaintiff lives with his mother and three children. He helps cook and clean, but does minimal shopping and minimal laundry. Plaintiff drives his kids to school and picks them up. If he goes grocery shopping, his children help him.

Plaintiff tries to read and watch television. Sometimes his medication "knocks [him] out." He smoked cigarettes until about four years ago. Plaintiff will drive his children to the mall or to the grocery store but he does not do much "excess running around." He gets tired within one to one and a half hours when he is on his feet too long or when he climbs stairs. He also gets shortness of breath when he "takes little walks, and [does] little exercises." When he is very fatigued, he dozes off. This occurs three to four times a week.

**2) Medical History**

Due to coronary artery disease, Plaintiff underwent an angioplasty with stent placement in his left anterior descending artery in 2005. In February 2009, he was admitted to the emergency room at St. Michael's Medical Center and was diagnosed with a subendocardial infarction. Plaintiff then underwent a percutaneous coronary intervention with an angioplasty and dual stent placement in his right coronary artery. Plaintiff had another cardiac catheterization performed in April 2009, and a stent was again placed in his left anterior descending artery. On July 15, 2009, Plaintiff was scheduled for pacemaker defibrillation placement. On July 16, 2009, an x-ray showed that Plaintiff had a pacemaker device in his left chest wall and no signs of active heart disease.

In March 2010, a study revealed that Plaintiff had a mild anterior peri-infarct ischemia, and he subsequently underwent a successful percutaneous coronary intervention with stent placement in the proximal left anterior descending artery, and a stent in the right coronary artery.

3

In June 2010, a carotid report found that Plaintiff had no hemodynamically significant stenosis and only minimal plaque seen bilaterally.

### 3) Doctors' Reports

In a June 22, 2009 internal medical report, Dr. Bart DeGregorio wrote that Plaintiff was limited to lifting and carrying five pounds, standing and/or walking eight hours a day, and sitting less than six hours a day. Dr. DeGregorio indicated that he could not, based on his medical findings, provide a medical opinion regarding Plaintiff's ability to do work related activities.

Dr. Naresh Rana wrote in September 1, 2010 and January 4, 2011 physical examination reports that Plaintiff had normal S1 and S2 sounds, had no murmurs, thrills, or rubs, denied experiencing shortness of breath, had a chest wall within normal limits, and had a regular rate and rhythm to his heart. Dr. Rana also noted at the September 1, 2010 physical examination that Plaintiff was doing well overall and denied chest pain, dyspnea upon exertion, or peripheral edema. Finally, Dr. Rana wrote that Plaintiff had diabetes mellitus without mention of complication and an essentially normal abdominal examination.

On December 23, 2010, Dr. DeGregorio and his associate, Dr. Cheema, wrote in a report that Plaintiff is limited to occasionally lifting five pounds and is incapable of even a low level of work stress.

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate

4

to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered "substantial." For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence– particularly certain types of evidence (e.g. that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). As such, it does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. Monsour Med. Ctr. V. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning. Accordingly,

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is

5

supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)). A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was rejected, the court is not permitted to determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

## III. APPLICABLE LAW

### A. THE FIVE-STEP PROCESS

A claimant's eligibility for benefits is governed by 42 U.S.C. §1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b, and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. §1382c(a)(3)(B).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. 20 C.F.R. §416.920. The claimant bears the burden of establishing the first two requirements, namely that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with a "severe impairment" or "combination of impairments." 20 C.F.R. §404.1520(a)-(c). If a claimant fails to demonstrate either of these two requirements, DIBs are denied and the inquiry ends. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1 (the "Listings"). If the claimant demonstrates that his impairment meets or equals one of the listed impairments, he is presumed to be disabled and therefore, automatically entitled to DIBs. Id. If he cannot make the required demonstration, further examination is required.

The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. 20 C.F.R. §416.920(e). If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and is not entitled to DIBs. Id. If the claimant is unable to return to his previous employment, the analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 416.920(g). If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs. Yuckert, 482 U.S. at 146 n.5.

### B. THE REQUIREMENT OF OBJECTIVE EVIDENCE

7

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record: "The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. Id. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b). See also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

## IV. DISCUSSION

Plaintiff claims that the ALJ erred in steps two through five of the five-step analysis. These steps will be addressed in turn.

### A. Steps Two and Three

8

First, Plaintiff argues that the ALJ did not properly do the required "combine and compare" analysis, which requires the ALJ to consider the combined effect of a claimant's impairments if the claimant has more than one. See Knepp v. Apfel, 204 F.3d 78, 85 (3rd Cir. 2000). However, the ALJ stated which Listings he considered and explained that no treating or examining physician mentioned findings that are the same or equivalent in severity to the criteria of any listed impairment. Additionally, Plaintiff does not specify which specific listing section and its criteria he believes his impairments medically equal.

Second, Plaintiff argues that the ALJ was incorrect in not considering his application for SSI. However, Plaintiff applied for SSI on the same day that he applied for DIBs, and his claim for SSI was denied. Plaintiff never appealed that decision. Thus, Plaintiff did not exhaust his administrative remedies with respect to his SSI application. Further, at the administrative hearing, the ALJ stated that the case involved a claim for DIBs, and Plaintiff's attorney agreed.

Third, Plaintiff argues that the ALJ improperly gave no weight to the findings of Drs. DeGregorio, Cheema, and Rana. This Court finds that the ALJ had sound reasons for this decision. For example, as the ALJ pointed out, Drs. DeGregorio and Cheema stated that Plaintiff could not lift more than five pounds, but Plaintiff himself admitted that he could lift five to ten pounds. Additionally, state agency medical consultant Dr. Goldbas considered Dr. DeGregorio's report and found that his limitation of Plaintiff lifting only five pounds was not consistent with Plaintiff's own report of function. Further, with respect to the contention of Drs. DeGregorio and Cheema that Plaintiff is incapable of even a low level of work stress, the ALJ noted that Plaintiff testified that he can sit and stand for up to two hours each, which is consistent with the demands of sedentary work with the normal breaks that exist in most jobs. The report of Dr. Rana is discussed below in the step four analysis.

9

Fourth, Plaintiff complains that the ALJ consulted section 4.00H3 to evaluate his cardiomyopathy when he should have consulted paragraph 4.08. However, 4.08 was deleted from the Listings in 2006 because it was redundant. See 71 Fed. Reg. 2312, 2318.

Fifth, Plaintiff complains that the ALJ never mentioned paragraph 4.04C, which was improper because Plaintiff has been found to suffer severe coronary artery disease. However, as Defendant points out, 4.04(C)(2) requires very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living. Plaintiff's testimony at his hearing clearly shows that he can complete activities of daily living.

Accordingly, the Court finds that the ALJ's analysis was supported by substantial evidence.

### B. Step Four

Plaintiff argues that the ALJ's finding of his RFC was "convenient, unsupported, and wrong." Plaintiff complains that "the ALJ [found him] capable of the full range of sedentary work activity, suffering no non-exertional impairments or limitations and there isn't a single word offered in support of either of these propositions." Plaintiff also again asserts that it was improper for the ALJ to not afford weight to the findings of his doctors, arguing that the ALJ's contention that the record does not support the doctors' findings is untrue. However, as discussed above, Drs. DeGregorio and Cheema stated that Plaintiff could not lift more than five pounds and Plaintiff himself admitted that he could lift five to ten pounds. Plaintiff also asserts that it was improper for the ALJ to not give weight to the limited functional capacity assessed by Dr. Rana. For example, the ALJ stated that Rana "assessed hands and fingering limitations that are not supported in the record," and Plaintiff argues that the ALJ did not point to which part of the record shows a lack of support. However, the ALJ did not identify a specific place in the record

because his point was that there is nowhere in the record that shows consistency with Dr. Rana's finding. Further, the ALJ pointed to the fact that Plaintiff made no mention of his hand and fingering limitations at his hearing and, as Defendant note, Dr. Cheema's June 30, 2009 physical examination revealed grossly normal neurologic findings, including no motor or sensory deficit, no tremors or signs of muscular weakness, and an unremarkable examination of Plaintiff's abdomen and extremities.

Finally, while Plaintiff claims that no evidence supports the RCF found by the ALJ, the ALJ pointed to several doctors' reports and several statement made by Plaintiff that do in fact support his finding on page six of his opinion. As such, this Court finds no occasion to hold that the ALJ's RFC finding was not supported by substantial evidence.

### C. Step Five

Plaintiff argues that "at step five the employment of the grid rulings is inappropriate in the face of (unacknowledged) plaintiff's non-exertional impairments" (Pl.'s Brief at 9). "To guide an ALJ at step five, the SSA has promulgated the Medical–Vocational Guidelines, also known as the 'grid rules.' The rules require the Commissioner to consider the claimant's physical ability, age, education, and experience, and match those findings with defined categories in the rules." Frontanez-Rubiani v. Barnhart, No. 03-1514, 2004 WL 2399821, at *3 (E.D. Pa. Sept. 30, 2004). When a claimant only "has only exertional limitations and her characteristics fit into a specific grid rule, the ALJ has no discretion." Id. at *4. Exertional impairments affect a claimanit's ability to "meet the strength demands of a job (sitting, standing, walking, lifting, carrying, pushing, and pulling)," whereas non-exertional impairments "are all other impairments that do not affect a claimant's ability to meet the strength demands of jobs." Caruso v. Comm'r of Soc. Sec., 99 F. App'x 376, 381 (3d Cir. 2004) (citiation omitted). The use of vocational expert

11

("VE") testimony is only necessary "when a claimant has severe exertional and nonexertional impairments." Bailey v. Comm'r of Soc. Sec., No. 07-2507, 2008 WL 4056306, at *9 (D.N.J. Aug. 28, 2008).

Plaintiff contends that VE testimony was required to establish that he was not disabled under step five. However, the ALJ did not conclude that Planitiff suffers from a severe non-extertional impairment. As discussed above, this Court finds that the ALJ's conclusions at steps two through four were supported by substantial evidence. Plaintiff also argues that the ALJ should have considered his diabetes because diabetes itself is a non-exertional impairment. However, Plaintiff has failed to establish that his diabetes resulted in any specific limitations beyond the ALJ's RFC finding for sedentary work. In fact, Dr. Rana noted a normal blood sugar level and stated that Plaintiff had diabetes without mention of any complication. Accordingly, the AJL was not required to use VE testimony at step five.

## V. **CONCLUSION**

For the foregoing reasons, the final decision of the Commissioner is affirmed. An appropriate order follows this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date: November 26, 2013
Original: Clerk's Office
cc: All Counsel of Record
    File

12